UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
LEMUEL SANTIAGO, *et al.*, :
: CASE NO. 1:09-CV-1224
Plaintiffs, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 19]
TOOL & DIE SYSTEMS, INC.*,* :
:
Defendant. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this employment discrimination case, Defendant Tool & Die Systems, Inc. ("Tool & Die"), moves for summary judgment on Plaintiff Lemuel Santiago's claim of national origin discrimination and Plaintiff Scott Torocsik's claim of retaliation. [Doc. 19.]

For the following reasons, this Court **GRANTS** the Defendant's motion for summary judgment as to Plaintiff Santiago and **DENIES** the motion as to Plaintiff Torocsik.

**I. Background**

Plaintiffs Santiago and Torocsik are former employees of Tool & Die Systems, Inc., a job shop that makes sheet metal parts. Tool & Die hired Santiago, who is Puerto Rican, in March 2004 to work as a second-shift set up operator in its fabrication department. At that time, Plaintiff Torocsik worked as floor supervisor for the fabrication department. In April 2006, Tool & Die fired Santiago, citing excessive absenteeism and elimination of his position. In January 2007, the

-1-

Case No. 1:09-CV-1224
Gwin, J.

Company fired Torocsik, citing similar absenteeism and poor work performance. Soon after, the Plaintiffs filed charges of discrimination with the EEOC and ultimately in this Court, alleging that Tool & Die fired Santiago on the basis of his national origin and fired Torocsik in retaliation for his supporting Santiago's EEOC charge and speaking out in opposition to discrimination.

Many of the facts in this case are not in dispute. Defendant Tool & Die makes precision sheet metal parts for various customers. [Doc. 20-8 at 2.] Employees in the Company's fabrication department are responsible for preparing and running programmable turret presses. [Doc. 20-10 at 12.] The fabrication department ran on two shifts. From approximately 1990-2008, Jim Beal supervised the department. [Doc. 20-8 at 1.] Until his termination in January 2007, Plaintiff Torocsik worked as a floor supervisor on first shift. [Doc. 20-7 at 2-3.]

### A. Plaintiff Santiago

On March 1, 2004, Beal hired Plaintiff Santiago to work as the second-shift set-up operator. [Doc. 20-6 at 26, 20-8 at 14.] As a set-up operator, Santiago was responsible for "zeroing out" the department's four turret machines, determining from a monitor what parts were ready for fabrication, preparing the machine for the job, starting the job, inspecting the machine's performance, and sharpening the machine's tools as needed. [Doc. 20-11 at 4-8.] Plaintiff Santiago had experience as a set-up operator on the same type of turret machine from his prior employment. [Doc. 20-6 at 4.]

According to Amy Haggard, who manages Tool & Die's attendance records, Santiago began missing work in April 2004. In fact, the Company's attendance records show that Santiago was absent or left work early fourteen times that year. [Doc. 20-1 at 3.] Similarly, in 2005, Santiago left

Case No. 1:09-CV-1224
Gwin, J.

work early ten times, was late four times, and missed work entirely for eleven days.[1] [*Id.*] Finally, the year he was terminated, Santiago missed two days of work in January, left early once in both February and March, missed eleven days in March while in the hospital, and left early twice in April. Ultimately, after Santiago missed work on April 13, 2006, Beal fired him. [Doc. 20-1 at 3, 20-6 at 31.]

When Santiago was gone, Torocsik would stay into the second shift to set up the machines because Santiago was the department's only second-shift set-up operator. [Doc. 20-6 at 8-9.] Ultimately, however, Beal says that because Santiago was absent so often, he had to rearrange the department's production schedule to prevent having new jobs begin during the second shift. [Doc. 20-8 at 15-22.] Instead, at the end of the first shift, employees would stop any currently-running jobs and set up the machines to run longer jobs through the second shift. [*Id.* at 15-16.] Eventually, the department did all of its small jobs during first shift and had longer running jobs processing before second shift started to ensure no set-up was required during the evening. [*Id.* at 17, 20.]

Ultimately, after discussions with Company owner William Flickinger about Santiago's absences and the new production schedule, Beal says he decided that Santiago's position was no longer necessary. [Doc. 20-9 at 1-2, 20-8 at 23.] Accordingly, Beal fired Santiago on April 17, 2006. [Doc. 20-6 at 31.] On May 5, 2006, Plaintiff Santiago filed a charge of national origin discrimination with the EEOC. [Doc. 20-6 at 35.]

### B. Plaintiff Torocsik

As the fabrication department floor supervisor, Plaintiff Torocsik organized the flow of work

---

[1] In fact, on Santiago's February 2005 performance appraisal review, Torocsik wrote "attendance" in the "major weaknesses" section. [Doc. 20-6 at 29.]

-3-

Case No. 1:09-CV-1224
Gwin, J.

orders, managed the employees on the floor, resolved machine issues, and generally assisted Beal with administering the department. [Doc. 20-7 at 15-17.]

According to Beal, Torocsik's attendance, attitude, and work performance began to suffer in spring 2006. For example, Beal says Torocsik began coming into work late, leaving work early, and otherwise disregarding his duties. [Doc. 20-8 at 3.] Flickinger says he also noticed Torocsik's change in behavior, including disrespectful comments to the company and a cavalier attitude about missed work: "[Torocsik] said he did not care, he'd come in when he wanted to. He did not care if he was late and got demerit points because he could work whatever hours he wanted to work at night." [Doc. 20-9 at 4-5.]

Torocsik's co-workers similarly noticed this attitude. For example, first-shift set up operator Michael Beal says that Torocsik boasted about his ability to "work all the extra hours he wanted" in order to make up for the pay he lost from being late and absent. [Doc. 20-3 at 2.] Employee Jesse Garcia says that Torocsik made the same statement to him one day on the shop floor. [Doc. 20-4.] Tool & Die employee Mark Honis says that Torocsik told him that Torocsik's start time was moved back two hours because he had a difficult time making it to work in the morning.[2] [Doc. 20-2 at 2.]

On May 25, 2006, Jim Beal gave a written notice to Torocsik for failing to show up to work or call in on the previous day. [Doc. 20-8 at 5-6, 21-1 at 25.] Torocsik says, however, that he told Beal on May 23, that he was taking a vacation day on the 24th. [Doc. 20-7 at 17.] In fact, Beal later approved the day off. [Doc. 21-1 at 30.] From May 25, 2006, to November 7, 2006, Torocsik was absent from work six days and more than thirty minutes late twice. [Doc. 20-1 at 7.]

---

[2] Both Honis and Jim Beal attribute some of Torocsik's behavior to his excessive drinking. [Doc. 20-2 at 2, 20-5 at 2.]

-4-

Case No. 1:09-CV-1224
Gwin, J.

On November 10, 2006, Beal gave a second written notice to Torocsik, stating: "You have had a few personal issues that have affected your performance lately. We are willing to help you seek help with your problems but there must be an effort put forward by you. Your continued performance cannot be tolerated." [Doc. 20-8 at 28.] Beal further says that shortly after he gave Torocsik this notice, Torocsik admitted that he was an alcoholic. [Doc. 20-5 at 2.]

Ultimately, when Torocsik missed work on January 29, 2007, Tool & Die owners Len Sikora and Flickinger fired him. According to Flickinger, the Company fired Torocsik because of his "total disrespect" and because his "performance was not up to par." [Doc. 20-9 at 11.] On February 13, 2007, Torocsik filed a charge of discrimination with the EEOC, alleging that Tool & Die terminated him in retaliation for his support of Santiago's EEOC charge and comments to Beal about the Company's allegedly discriminatory hiring practices. [Doc. 20-7 at 53.]

After receiving right to sue letters, Santiago and Torocsik filed a Complaint in this Court on May 28, 2009, alleging national origin discrimination and retaliation respectively. [Doc. 1.] On November 30, 2009, the Company filed a motion for summary judgment as to both claims. [Doc. 19.] The Plaintiffs have responded and the Defendant has replied. [Doc. 21, 22.] Accordingly, the motion is now ripe for ruling.

**II. Legal Standard**

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477

Case No. 1:09-CV-1224
Gwin, J.

U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings. FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the

Case No. 1:09-CV-1224
Gwin, J.

evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale*, 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

Plaintiff Santiago brings a claim of national origin discrimination under 42 U.S.C. § 2000e-2 and Ohio Rev. Code § 4112.02(A). Plaintiff Torocsik brings a claim of retaliation under 42 U.S.C. § 2000e-3 and Ohio Rev. Code § 4112.02(I). In deciding the Defendant's motion for summary judgment, the Court looks to whether the Plaintiffs have failed as a matter of law to make the required prima facie case of discrimination or showing of pretext. Because Santiago's and Torocsik's claims assert different grounds of discrimination, the Court analyzes the claims separately.

### A. Plaintiff Santiago

In its motion for summary judgment, Defendant Tool & Die asserts that Santiago's discrimination claim fails under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applicable to single-motive discrimination claims. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 n. 10 (6th Cir. 2008). Opposing summary judgment, however, Plaintiff Santiago makes arguments under both a single-motive (an illegitimate reason motivated the termination) and mixed-motive (both legitimate and illegitimate reasons motivated the termination) analysis. [Doc. 21 at 6-10.] With their reply, the Defendants say that Santiago fails as a matter of law on either type of claim. [Doc. 22 at 1.] Accordingly, this Court analyzes Santiago's complaint as both a single-motive and mixed-motive claim.

-7-

Case No. 1:09-CV-1224
Gwin, J.

*1. Single-Motive Analysis*

Absent direct evidence of discrimination, claims brought pursuant to Title VII's anti-discrimination provisions and Ohio Rev. Code §4112 *et seq.*, are subject to the burden-shifting framework announced by the Supreme Court in *McDonnell Douglas Corp., supra*, and subsequently modified in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). On a motion for summary judgment, "a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

To make out a prima facie case of national original discrimination, Santiago must show that: (1) he is a member of a protected class; (2) Tool & Die terminated him; (3) he was qualified for the position; and (4) Tool & Die replaced him with a person outside a protected class or treated him differently than a similarly situated, non-protected employee. *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 501 (6th Cir. 2007). In this case, the Defendant does not contest that Santiago can make the first three of the required prima facie showings. Instead, it asserts that Santiago fails to meet his burden as to the fourth requirement, i.e., saying Santiago has failed to produce sufficient evidence that he was replaced by a person outside the protected class or was treated differently than a similarly situated employee.[3] [Doc. 20 at 8.]

First, the Court finds no genuine dispute of material fact as to whether the Defendant treated Santiago differently than a similarly situated employee. Santiago makes no argument in this respect and proffers no evidence that any of his non-Hispanic co-workers accrued similar absences but were

---

[3] To qualify as "similarly situated," an employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Hollins v. Atl. Co.*, 188 F.3d 652, 659 (6th Cir. 1999).

Case No. 1:09-CV-1224
Gwin, J.

not terminated.

As to whether Tool & Die replaced Santiago, generally, "a person is not considered replaced when his duties are absorbed by another person or when the work is redistributed among other existing employees already performing related work." *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir 2009); *see also Nordahl v. Studer Revox Am., Inc.*, 78 F.3d 585, at *3 (6th Cir. 1996) (table )("It is well-established that spreading the former duties of a terminated employee among the remaining employees does not constitute replacement.").

According to Beal and Flickinger, the Company eliminated Santiago's position entirely as a result of rearranging the fabrication department's production schedule. [Doc. 20-8 at 13-17, 20-9 at 2.] Thus, the Company shifted some of Santiago's duties to Torocsik and other first-shift workers. Under *Geiger*, this restructuring does not constitute "replacement."

In opposing summary judgment, however, Santiago says that the Company did in fact replace him with a Caucasian male named Jeffery Behr,. [Doc. 21-4 at 3.] Santiago's only support for this contention, however, is the affidavit of co-Plaintiff Torocsik, made after the Defendant filed its motion for summary judgment. In this affidavit, Torocsik actually says that the Company hired Behr to replace a Vietnamese male named Thanousone Thongphadith.[4/] [Doc. 21-4 at 3.] Moreover, Tool & Die's records show that the Company hired Behr as a second-shift supervisor, not as a set-up operator. [Doc. 22-1 at 4, 21-4 at 5.]

Thus, Santiago's proffered evidence on this issue is insufficient to create a genuine dispute of material fact as to whether the Defendant replaced him with a person outside the protected class. Accordingly, Plaintiff Santiago has failed to adequately support his prima facie case of national origin

---

[4/] Tool & Die's employment records show that the Company hired Thongphadith in June 2006 to work first-shift. [Doc. 22-1 at 4.]

Case No. 1:09-CV-1224
Gwin, J.

discrimination.

Even if Santiago had produced adequate evidence to make out a prima facie case of discrimination, he fails to show that the Defendant's proffered reason for terminating him—his absences and the elimination of the second-shift set up operator position—is pretextual.[5] A plaintiff can establish pretext by demonstrating that the defendant's articulated legitimate, nondiscriminatory reason either: (1) lacks a basis in fact, (2) did not actually motivate his discharge, or (3) was insufficient to motivate his discharge. *Vincent v. Brewer Co.*, 514 F.3d 489, 497 (6th Cir. 2007).

As evidence of pretext, Santiago points to Tool & Die's subsequent hiring of Thongphadith and Behr. [Doc. 21 at 10.] As discussed previously, however, Santiago has not produced evidence that the Company hired either Thongphadith and Behr to replace him. Thus, their hiring does not cast doubt upon the Defendant's explanation for terminating Santiago. Moreover, Santiago makes no challenge to the Company's further reliance on his absences, tardiness, and leaving early as a basis for firing him.

Thus, Santiago has failed to produce sufficient evidence to create a genuine dispute of material fact as to both his prima facie case and the issue of pretext.

*2. Mixed-Motive Analysis*

In his brief in opposition, Santiago also argues that his "termination was motivated, in whole *or in part*, upon an impermissible basis." [Doc. 21 at 8.] (emphasis added). Such an argument invokes a mixed-motive theory of discrimination, to which the *McDonnell Douglas* framework does not apply. See *White*, 533 F.3d at 400. Nevertheless, the Defendant says that Santiago fails to produce sufficient evidence to support his mixed-motive argument. [Doc. 22 at 6.]

---

[5] The Court finds and the Plaintiff does not contest that the Defendant has produced sufficient evidence to show that it had a legitimate, nondiscriminatory reason for Santiago's termination.

Case No. 1:09-CV-1224
Gwin, J.

To survive the motion for summary judgment on his mixed-motive claim, Plaintiff Santiago must produce evidence sufficient to convince a jury that: (1) Tool & Die took an adverse employment action against him; and (2) national origin was a motivating factor for this adverse employment action. *White*, 533 F.3d at 400. Because the parties do not dispute that Defendant Tool & Die fired Santiago, he must only produce sufficient evidence that his national origin was a motivating factor for his termination.

In an effort to meet this burden, Santiago makes four allegations: (1) Beal only hired Santiago reluctantly; (2) Beal made derogatory comments about Puerto Ricans and African-Americans; (3) Beal condoned or permitted conduct that created a hostile work environment at Tool & Die; and (4) Beal harbored disdain for Santiago's lengthy hospitalization in March and April 2006. [Doc. 21 at 8-9.]

The first and fourth of these allegations provide little if any support for Santiago's claim. Even if Beal hired Santiago "reluctantly," there is little evidence in the record that this reluctance was because Santiago was Puerto Rican.[6/] Similarly, even assuming Beal's desire to fire Santiago stemmed from Santiago's lengthy hospital stay, that fact does not permit an inference of national origin discrimination.

As for the claim that Beal made derogatory comments about minorities and fostered a hostile working environment, Santiago says that he once overheard Beal use the term "spics" while commenting about clothing worn by Puerto Ricans. [Doc. 21-3 at 1, 20-6 at 9.] In addition, Torocsik says that Beal called an African-American employee a "boy" while scolding him for wearing loose

---

[6/]The only evidence supporting such an inference is Torocsik's allegation that Beal hired Caucasians immediately while making minority employees wait for several months. There is no indication that such a lengthy delay occurred in Santiago's case, however.

-11-

Case No. 1:09-CV-1224
Gwin, J.

clothing and that Beal "commented in like fashion to Puerto Rican temp workers who wore oversized shirts or baggy pants." [Doc. 21-4 at 2.] Torocsik admits, however, that this is the only racial slur he could recall Beal making at Tool & Die.[7] [Doc. 20-7 at 32.]

Even assuming all of the Plaintiffs' allegations to be true, they are too isolated and indirect to permit a finding that national origin was a motivating factor for terminating Santiago. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998) ("Isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of [] discrimination.") (internal quotations omitted). Though a different result might attain if the comments had been made more often, directed at Santiago himself, or made closer in time to Santiago's ultimate termination, *see, e.g.*, *Vincent v. Brewer Co.*, 514 F.3d 489, 498 (6th Cir. 2007) (finding that managers' derogatory comments precluded summary judgment on employees' discrimination claims where the comments were "numerous" and some "specifically convey[ed] a desire to terminate female employees"), they simply do not support the inference necessary here: that Beal terminated Santiago in part because of his national origin. *Cf. Phelps v. Yale Secs., Inc.*, 986 F.2d 1020, 1026 (6th Cir. 1993) (comments made one year prior to plaintiff's termination that she "would still be the plant manager's secretary if she were younger" and that her fifty-fifth birthday was "cause for concern" were too attenuated to support inference that they influenced termination decision).

Because Santiago's national origin discrimination claim fails under either a single-motive or mixed-motive analysis, the Court **GRANTS** summary judgment to the Defendant on his claim.

---

[7] For his part, Beal says that has never used those terms in the workplace. [Doc. 21-1 at 23.]

Case No. 1:09-CV-1224
Gwin, J.

## B. Plaintiff Torocsik

Plaintiff Torocsik alleges that Tool & Die terminated him in retaliation for engaging in the protected activity of supporting Santiago's EEOC charge and confronting Beal about his allegedly racist behavior. [Doc. 1 at 3.] In moving for summary judgment on this claim, the Defendant says Torocsik cannot show that Tool & Die was aware of his protected activity and cannot show that its proffered reason for terminating him—excessive absences and poor performance as a supervisor—is a pretext.

As an initial matter, the parties dispute what "protected activities" Torocsik may rely on in support of his case. Specifically, although Torocsik alleges that he both supported Santiago's EEOC charge and spoke out against Beal's alleged discrimination, the Defendant says his claim is limited to his defense of Santiago. [Doc. 22 at 13.] For support, the Company relies on the general rule that a federal court's authority over a discrimination claim is limited "to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991).

The Defendant's argument is not well taken. For one, Torocsik's EEOC charge states: "I had told Mr. Buel [sic] that my poor attitude was due to his discriminatory behavior when he hired Caucasian employees off the street and made minorities [sic] employees go through a temporary agency and still not hire them for six to nine months." [Doc. 20-7 at 53.] Thus, Torocsik's charge does raise the issue of his confronting Beal about matters unrelated to Santiago.

In addition, EEOC charges filed by lay complainants must be construed broadly so as not to allow procedural technicalities to preclude Title VII complaints. *See Tipler v. E.I. duPont deNemours & Co*, 443 F.2d 125, 131 (6th Cir. 1971) (holding that employee could pursue claim that he was

-13-

Case No. 1:09-CV-1224
Gwin, J.

discharged for opposition to employer's allegedly unlawful employment practices even though EEOC charge stated only that he was punished for "asserting his rights as an employee"). Accordingly, this Court considers both Torocsik's support for Santiago's EEOC charge as well as his comments to Beal about Beal's alleged discrimination as the "protected activity" in which Torocsik engaged.

To survive the Defendant's motion for summary judgment on his unlawful retaliation claim, Torocsik must produce evidence sufficient to convince a jury that: (1) he engaged in a protected activity; (2) Tool & Die had knowledge of his protected conduct; (3) Tool & Die subsequently terminated him; and (4) there was a causal connection between the protected activity and the termination. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). If Torocsik succeeds in doing so, the burden shifts to Tool & Die to articulate a nondiscriminatory reason for its actions. *Id.* at 526. Finally, if the Defendant articulates such a reason, Torocsik may then show that Tool & Die's stated reason "is merely a pretext for discrimination." *Id.*

Defendant Tool & Die says that Torocsik cannot show that it was aware that he was helping Santiago with his EEOC charge. [Doc. 20 at 14.] Torocsik, however, says that he told Beal's brother Mike as well as co-worker Mark Honis that he was planning to make a statement to the EEOC and that he believed the Company was engaging in unlawful discrimination. [Doc. 20-7 at 27-28.] Both Mike Beal and Honis deny this claim.[8/] [Doc. 20-2, 20-3.]

In addition, Torocsik claims that he confronted Beal about Tool & Die's hiring practices at least once. [Doc. 21-4 at 1, 3.] Specifically, Torocsik says that before Tool & Die fired Santiago, he "questioned James Beal why it was that whites or Caucasians were hired right off the street when

---

[8/]Honis does say that he asked Torocsik how Santiago was doing after being fired and that Torocsik said that Santiago "was trying to get unemployment and if he didn't get that then he would go for discrimination." [Doc. 20-2 at 1.]

-14-

Case No. 1:09-CV-1224
Gwin, J.

black or Hispanics who worked as temp employees for months on end were not brought on as regular employees." [Doc. 21-4 at 1.] Plaintiff Torocsik also says that sometime after Santiago was fired he again "commented to James Beal that the hiring practices of Tool & Die suggested that minorities were not hired fairly." [Doc. 21-4 at 3.] Torocsik asserts that he made this statement to Beal less than three months prior to his termination.

Although the Defendant disputes that Torocsik made at least the statements regarding the EEOC charge, this Court finds that Plaintiff Torocsik has presented sufficient evidence to make out a prima facie case of discrimination. Similarly, the Defendant has presented sufficient evidence in support of its proffered nondiscriminatory reason for firing Torocsik: his absences and poor attitude. Accordingly, the Court analyzes whether Torocsik has presented sufficient evidence that this reason is a pretext.

Torocsik can refute the legitimate, nondiscriminatory reason that Tool & Die offers to justify an adverse employment action by showing that the proffered reason: (1) has no basis in fact, (2) did not actually motivate the adverse employment action, or (3) was insufficient to warrant the adverse action. *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558 (6th Cir. 2009). As evidence of pretext, Plaintiff Torocsik says that the Defendant's reasons for terminating him have "shifted" over the course of the EEOC investigation and this litigation and that he only faced adverse consequences for his poor attendance and attitude after the Company fired Santiago.

As to the Plaintiff's first contention, although in this litigation Tool & Die has focused largely on Torocsik's poor attitude as its reason for terminating him, this is a matter of emphasis, not shifting justifications. In fact, the Company raised both the issues of his absences and poor attitude with the EEOC. For example, in its EEOC position statement the Company says: "Torocsik was terminated

-15-

Case No. 1:09-CV-1224
Gwin, J.

for absenteeism, which obviously also adversely affected his job performance."[9] [Doc. 21-6 at 2.] Moreover, both Beal and Flickinger testified that Torocsik's absences formed the basis for his poor job performance and attitude as a manager, since he allegedly boasted to co-workers that he could work all the overtime he wanted to make up for lost wages.

Nevertheless, the timing of Torocsik's reprimands and termination is sufficient evidence to create a fact issue as to whether his absences and poor attitude actually motivated his termination. Specifically, despite the fact that Torocsik had been late, absent, or left work early approximately fifteen times in 2004 and nineteen times in 2005, it was not until May 2006 that Beal decided to give Torocsik a written notice.[10] [Doc. 20-7 at 50, 20-1 at 6-7.] Although the Defendant says that Torocsik's attitude soured in 2006, the Company only gave Torocsik one written notice in November. Thus, a jury could infer from the temporal connection between these reprimands and Torocsik's support of Santiago's EEOC charge and comments to Beal that Tool & Die's proffered reason for terminating him is a pretext.

Accordingly, the Court **DENIES** the Defendant's motion for summary judgment on Plaintiff Torocsik's retaliation claim.

### IV. Conclusion

For the foregoing reasons, this Court **GRANTS** the Defendant's motion for summary

---

[9] Moreover, Torocsik's own EEOC charge references that he received a memorandum "for my poor attitude." [Doc. 20-7 at 53.]

[10] Although Beal says that Torocsik's attendance was "getting worse," in both 2004 and 2005, Torocsik had been absent four times by the month of May. [Doc. 20-1 at 6.] In 2006, Torocsik had been absent only three times prior to receiving the written notice. [Doc. 20-1 at 7.]

Case No. 1:09-CV-1224
Gwin, J.

judgment as to Plaintiff Santiago and **DENIES** the motion as to Plaintiff Torocsik.

    IT IS SO ORDERED.


Dated: January 22, 2010　　　　　　　　　　　　s/     *James S. Gwin*
　　　　　　　　　　　　　　　　　　　　　　　　JAMES S. GWIN
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE